**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                         No. CR 14-2579 JB

GARY BALLOU,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (i) the Government's Motion in Limine Regarding Prior Acts of the Victim, filed October 2, 2014 (Doc. 22)("First MIL"); (ii) the Government's Second Motion in Limine and Objections to Defendant's Proposed Exhibits, filed October 9, 2014 (Doc. 35)("Second MIL"); and (iii) the Government's Third Motion in Limine, filed October 9, 2014 (Doc. 36)("Third MIL").  The Court held a hearing on October 9, 2014. The primary issues are: (i) whether Defendant Gary Ballou may introduce evidence of prior altercations between the alleged victim, Harry Jaquez, and employees of the Raymond G. Murray Veterans Affairs Medical Center in Albuquerque, New Mexico ("VA Hospital"); and (ii) whether Ballou may admit into evidence various other documents and video excerpts that Plaintiff United States of America has sought to exclude.  The Court will allow Ballou to elicit testimony -- but not to admit documents -- regarding Jaquez' three prior altercations with VA Hospital staff, because the evidence is admissible for proper purposes under rule 404(b) of the Federal Rules of Evidence -- namely, to show Ballou's state of mind in support of a defense of self-defense, and to show Jaquez' intent, motive, plan, absence of mistake, and modus operandi. The Court will, however, exclude on hearsay grounds most of the documents that the United

States seeks to bar, except for those that can be validly used for purposes other than the truth of their assertions -- namely, a contract form that Jaquez refused to sign and portions of a letter the VA Hospital wrote to Jaquez, placing severe restrictions on his movements in and around the VA Hospital.  Last, the Court will exclude Jaquez' judgment of conviction on a 2009 misdemeanor battery and admit excerpts of a video of the parking lot in which the incident occurred.

## FACTUAL BACKGROUND

The Court takes its facts -- for background purposes only, as Ballou is obviously presumed innocent until proven guilty at trial -- primarily from the Criminal Complaint, filed July 21, 2014 (Doc. 1)("Complaint").   Around 4:10 p.m. on July 18, 2014, Justin Pillera, a federal police officer with the Department of Veteran Affairs Police, received a call on his radio that a VA Hospital employee was attacking a patient in the VA Hospital's parking lot C.  See Complaint at 1-2.  Pillera arrived at parking lot C and, seeing nothing, drove to parking lot D, where a group of bystanders had congregated.  See Complaint at 2.  A bystander directed Pillera to Ballou, who, in turn, told Pillera that Jaquez had attacked Ballou.  See Complaint at 2.  Ballou is a nurse in the dialysis unit of the VA Hospital.  See Government's Reply to the Defendant's Response to the Government's Motion in Limine Regarding Prior Acts of the Victim at 2, filed October 8, 2014 (Doc. 30)("Reply").

Ballou told Pillera that Jaquez "'came up [to him] and just started punching [him] in the neck and [he] tried to get away.'"  Complaint at 2 (quoting Ballou).  Ballou stated that he had been attempting to walk to his vehicle, but that Jaquez had driven his car behind Ballou's vehicle and used it to block his vehicle.  See Complaint at 3.  Ballou told Pillera that Jaquez continued to yell and threaten Ballou as Jaquez exited his vehicle, that Jaquez struck Ballou with his fist, that Ballou blocked Jaquez' strikes, and that Jaquez began to kick Ballou.  See Complaint at 3.

Jaquez, on the other hand, told Pillera that, after he was escorted to his car -- Jaquez is apparently routinely escorted to his car after his medical appointments because of VA Hospital regulations -- he drove out of the parking lot and was confronted by Ballou, who saw him and began to yell, curse, and direct a vulgar finger gesture at Jaquez.  See Complaint at 3.  Jaquez relayed that he turned into parking lot D to inquire what Ballou wanted and to let vehicles behind him pass, but he later stated he turned into the parking lot to avoid hitting Ballou.  See Complaint at 3.  Jaquez stated that Ballou began to chase him, and, once he caught up to Jaquez, he began to hit Jaquez' vehicle.  See Complaint at 3.  Jaquez stated that he rolled down his window, and that Ballou hit Jaquez in the face with his backpack and broke Jaquez' glasses.  See Complaint at 3.  Jaquez relayed that Ballou continued to hit his car and that Jaquez exited his vehicle, because he was angry and wanted Ballou to stop hitting his car.  See Complaint at 3.  Jaquez stated that, as he exited the vehicle on the driver's side, Ballou trapped him between his door and the car by pushing on the door.  See Complaint at 3.  Jaquez relayed that Ballou repeatedly pushed and pulled the door rapidly, using the door to strike his body and left leg.  See Complaint at 3.  Jaquez conveyed that bystanders instructed Ballou to stop and that they were calling the police.  See Complaint at 3.  Heeding their warnings, Ballou stopped.  See Complaint at 3.

After talking to Ballou and Jaquez, Pillera talked to three witnesses to the incident: Diane Meitzler, William Talley, and Carla Dunkelberger, all of whom are VA Hospital employees.  See Complaint at 3.  All three accounts were consistent with Ballou approaching Jaquez' vehicle, yelling "'[c]ome on faggot, you fuckin faggot,'" or something very similar, and then instigating physical violence against Jaquez.  Complaint at 4 (quoting witness quoting Ballou).  All three witnesses described Ballou as the initial physical aggressor -- slamming the door into Jaquez' chest -- but noted that Jaquez responded by attempting to kick Ballou.  See Complaint at 3-4.

Based on the witness' reports, Pillera arrested Ballou.  <u>See</u> Complaint at 4.  Jaquez reported that his left eye and his back were in pain, and that he had sustained injuries to his left arm and his hands.  <u>See</u> Complaint at 5.  Pillera verified that "Jaquez's left eye appeared to be red and the facial area around his eye was swelling and bruised"; he "also found bruising and swelling on the top of both of his hands and also on his left arm[, but] did not find any marks or scratches on his legs or any other parts of his body."  Complaint at 5.  Jaquez declined medical treatment.  <u>See</u> Complaint at 5.

## PROCEDURAL BACKGROUND

The United States charged Ballou by information,[1] charging him with "[a]ssault by striking, beating, or wounding" another person "within the special maritime and territorial jurisdiction of the United States," a class A misdemeanor punishable by "a fine . . . or imprisonment for not more than 1 year, or both."  18 U.S.C. § 113(a)(4).  <u>See</u> Second Amended Information at 1, filed August 4, 2014 (Doc. 12).[2]  The case is set for jury trial on October 15,

---

[1] The United States must prosecute felonies -- crimes punishable by more than one year -- by indictment -- a charging document which a simple majority of the members of a grand jury must approve -- unless the defendant waives his or her right to indictment by grand jury in open court.  <u>See</u> U.S. Const. amend. V, cl. 1 ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."); Fed. R. Crim. P. 7(a)(1).  The United States, may, however, prosecute a misdemeanor -- an offense punishable by one year or less -- by information, a charging document that only an Assistant United States Attorney need sign.  <u>See</u> Fed. R. Crim. P. 7(a)(2), 58(b)(1).

[2] The United States amended the information twice in this case, apparently to correct clerical errors.  The initial Information, filed July 22, 2014 (Doc. 6), charges Ballou with "violation of 18 U.S.C § 113(a)(4) (a Class B misdemeanor)," Information at 1, but § 113(a)(4) is a class A misdemeanor because it is punishable by "imprisonment for not more than 1 year," 18 U.S.C. § 113(a)(4).  <u>See</u> 18 U.S.C. § 3559(a)(6)-(7) (defining a class A misdemeanor as an offense punishable by "one year or less but more than six months," and a class B misdemeanor as an offense punishable by "six months or less but more than thirty days").  The United States corrected the "Class B" to "Class A" in the next iteration of the information.  <u>See</u> Amended Information at 1, filed July 25, 2014 (Doc. 8).  The third iteration of the information added jurisdictional allegations -- namely, that the offense occurred "at the Raymond G. Murray VA

2014, and the United States has filed three motions in limine asking the Court to impose restrictions on the evidence that Ballou can introduce at trial.

The First MIL seeks to bar Ballou from introducing evidence of an August 28, 2013, encounter between Jaquez and another VA Hospital employee, Paul Mirabal. See First MIL at 2. On this occasion, Mirabal "called Albuquerque police to complain that . . . Jaquez was following him in a car and had attempted to crash into him." First MIL at 2. Jaquez denied these allegations. See First MIL at 2. The United States' argument is straightforward: although, under rule 404(a)(2), Ballou can introduce character evidence against Jaquez, rule 405 provides that such evidence must come in the form of opinion or reputation testimony, and not by specific instances of conduct. See First MIL at 2-4 (citing Fed. R. Evid. 404(a)(2)(B), 405). The United States argues that the Jaquez-Mirabal incident is a "specific instance[] of conduct" that rule 405(b) bars, and that the Court should exclude the evidence. See First MIL at 2-4.

Ballou responded to the First MIL within the week. See Defendant Gary Ballou's Response Regarding Prior Acts of the Victim and Motion in Limine Regarding Other Acts, filed October 6, 2014 (Doc. 26)("Response").[3] Ballou's counterargument is equally straightforward: he essentially concedes that the Jaquez-Mirabal incident is not -- pursuant to rule 405 -- a proper form of character evidence under rule 404(a)(2). See Response at 2-3. Rather, Ballou contends that the Jaquez-Mirabal incident is not character evidence at all, but evidence of Jaquez' plan, motive, or absence of mistake in entering the employee parking lot. See Response at 3-5. Ballou

---

Medical Center in Albuquerque, New Mexico, and within special maritime and territorial jurisdiction of the United States" -- and is otherwise identical. Second Amended Information, filed August 4, 2014 (Doc. 12).

[3]Ballou submitted two versions of the Response on the same day. The first, Document 25 on CM/ECF, has no exhibits attached to it; the second, Document 26 on CM/ECF, consists of an identical argument section, but contains numerous exhibits appended to it.

says that Jaquez will likely argue at trial that "he was there 'to get off the road and . . . get away from [Ballou, but t]his does not make sense.'"  Response at 4.  Ballou argues that the Court should admit evidence of the Jaquez-Mirabal incident to show that Jaquez "had a motive and plan to attack Ballou for the third time," and that that there was "absence of mistake as to [Jaquez] being in the employee parking lot," which "lead[s] to only one conclusion," which was that Jaquez was looking to start a fight.  Response at 4.

Ballou attached numerous exhibits to his Response.  <u>See</u> Response at 7-28.  These include: (i) a letter from a VA Hospital administrator to Jaquez, dated May 18, 2012, responding to thirteen customer service complaints that Jaquez had apparently lodged with the VA Hospital, <u>see</u> Response at 7-9; (ii) a letter to Jaquez from the VA Hospital's chief of staff, dated August 1, 2012, in which the chief of staff notes that he believes Jaquez is "confrontational and threatening toward dialysis staff members," Response at 10; (iii) a generic contract form outlining patients' obligations to appear on time, behave non-threateningly, et cetera, dated August 1, 2012, on which a would-be signatory, presumably Jaquez, wrote "Refused to Sign" on the signature line, Response at 11; (iv) a typed complaint, dated December 26, 2010, by Ballou against Jaquez, in which Ballou states that Jaquez struck him in the arm with a cane and told him that he "need[s] to kick [Ballou's] ass!," Response at 12; (v) an undated handwritten complaint by Ballou against Jaquez apparently describing a separate incident, in which Jaquez called Ballou an "asshole" and told him that he "need[s] to have [his] ass kicked," Response at 13; (vi) a police report that Mirabal submitted regarding the Jaquez-Mirabal incident, <u>see</u> Response at 14-26; (vii) a VA Hospital contact form dated August 28, 2014, that appears to document complaints that Jaquez made against the VA Hospital and various staff, <u>see</u> Response at 17; (viii) five letters -- written by Ann Burcham, Otis Schubel, Noel Jaderborg, Jan Moughan, and Annette Vega, who all

appear to be nurses at the VA Hospital -- to unknown recipients, all of which were apparently written after the July 18, 2014, incident between Ballou and Jaquez, attesting to the authors' difficulty dealing with Jaquez as a patient, see Response at 18-23; (ix) a black-and-white photograph of a sign that reads, "EMPLOYEE PARKING GOLD DECAL ONLY," Response at 24; (x) a letter that the VA Hospital's deputy chief of staff wrote to Jaquez, dated September 26, 2013, which reprimands Jaquez for his "disruptive and threatening behaviors," Response at 25-28.  These ten exhibits (i) through (x) are marked A through J, respectively.  See Response at 7-28.

The United States filed its Reply two days later.  See Reply at 1.  The United States uses the Reply to expand the scope of the evidence it seeks to bar, although it is not clear how far. See Reply at 2.  The Court suspects that the United States may have learned of many of the incidents to which Ballou's exhibits refer only upon reading the Response.  At the very least, the United States now seeks to exclude evidence of a December 20, 2010, incident between Jaquez and Ballou in which Jaquez allegedly poked Ballou with his cane and said: "'I need to kick your ass.'"  Reply at 2.  The United States may additionally be seeking to exclude some or all of the documents attached as exhibits to Ballou's Response.  See Reply at 2.

The United States first argues that the evidence is not relevant, because

[t]he fact that Jaquez had a difficult relationship with the staff at the VA Hospital or that he is alleged to have poked Ballou with a cane in 2010 or that he was alleged to have followed another employee in 2013, does not make it more likely that Jaquez entered the wrong parking lot with intent to assault Ballou.  Ballou had most likely seen Jaquez hundreds of times since the 2010 incident without being attacked by him.

Reply at 3.  The United States second argues that the evidence is not proper rule 404(b) evidence.

> Admissible evidence under Rule 404(b) must meet the following criteria: First, it must tend to establish motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident; second, it must be so related to the claim of self-defense that it serves to establish one of the above factors with respect to the claim of self-defense; third, it must have real probative value, not just possible worth; and, fourth, it must be close in time to the conduct at issue.

Reply at 4 (citing United States v. Harrison, 942 F.2d 751, 759 (10th Cir. 1991)).  The United States contends that "[t]here also must be a clear and logical connection between the evidence and the case being tried."  Reply at 4 (citing United States v. Biswell, 700 F.2d 1310, 1317-18 (10th Cir. 1983)).  The United States argues that the prior incident between Ballou and Jaquez does not tend to show motive, intent, plan, identity, or absence of mistake, and that, even if it did, it is too remote in time given the multiple years between the prior incident and the incident giving rise to this case.  See Reply at 5.  Last, the United States argues that, even if some proper rule 404(b) purpose for the evidence exists, it should still be excluded on rule 403 grounds, because its prejudicial impact substantially outweighs its probative value.  See Reply at 5-6.

The United States filed its Second MIL and Third MIL on October 9, 2014, the same day as the Court held a hearing on all three motions in limine.  See Second MIL at 1; Third MIL at 1; Transcript of Hearing (taken October 9, 2014)("Tr.").[4]  In the Second MIL, the United States objects to: (i) Exhibits A through F, and J, of Ballou's Response, on the grounds that the reports are hearsay within hearsay, see Second MIL at 2-3 (citing Complaint of Paducah Towing Co., Inc., 692 F.2d 412, 420-21 (6th Cir. 1982); Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991); Miller v. Field, 35 F.3d 1088, 1089 (6th Cir. 1994)); (ii) excerpts of a VA Hospital surveillance video, not attached in the Response, see Second MIL at 3; and (iii) evidence of a

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

prior misdemeanor battery conviction by Jaquez, because it "is not appropriate impeachment evidence under Federal Rule of Evidence 609 because it is a misdemeanor conviction," Second MIL at 3.  The Third MIL does not seek the exclusion of any particular piece of evidence, but, rather, "requests that this Court issue an Order restricting the testimony of defense witnesses to reputation only."  Third MIL at 3.  It asserts that none of the witnesses on the defense witness list -- with the exception of Ballou himself -- were witnesses to the charged incident and surmises that those witnesses will be called to testify to Ballou's positive, peaceful character.  See Third MIL at 2.

At the hearing, Ballou stated that Exhibits C, I, and J are the only ones "that [he] believe[s will] come into evidence probably on their own."  Tr. at 37:23-38:1 (Benjamin).  He stated that Exhibits C and J are contract forms that Jaquez refused to sign, and that Jaquez' refusal is an indication of his generally aggressive nature, which is an issue in the case.  See Tr. at 38:1-22 (Benjamin).  Ballou more broadly argued that all the past incidents and friction between Jaquez and employees of the VA Hospital would help the jury understand Ballou's state of mind during the charged incident.  See Tr. at 39:3-13 (Benjamin).  The Court inquired whether Ballou was aware of all of the prior incidents at the time of the charged incident, and Ballou answered in the affirmative.  See Tr. at 39:14-24 (Court, Benjamin).  Ballou conceded that Exhibit H -- the letters from various VA Hospital employees -- were "clear[ly] . . . not admissible," but said that he was calling the letters' authors to testify, as their testimony "go[es] to the objective reasonableness of Mr. Ballou," and his self-defense defense.  Tr. at 40:7-25 (Benjamin).

The United States immediately conceded that Ballou could call any witness to testify as to their opinion of Jaquez and Jaquez' reputation.  See Tr. at 44:11-12 (Cairns).  It argued,

however, that no specific prior instances of Jaquez' conduct could be introduced, because rule 405 bars such testimony, and -- while rule 404(b) permits the introduction of prior bad acts to prove motive, intent, et cetera -- no proper rule 404(b) purpose supports the introduction of any evidence regarding Jaquez' prior acts.  <u>See</u> Tr. at 44:17-45:1 (Cairns).  The United States asserted that the supposed rule 404(b) purposes that Ballou articulated in his Response are pretextual, and that the "evidence he wants to bring in to basically dirty up Mr. Jaquez . . . is also inadmissible under 403."  Tr. at 46:12-14 (Cairns).

Ballou argued that the prior incident -- he appeared to be referring principally to the Jaquez-Mirabal incident -- goes to show motive and absence of mistake.  <u>See</u> Tr. at 47:24-48:1 (Benjamin).  Ballou asserts that, in one of Jaquez' prior statements regarding the charged incident, Jaquez asserted that he only "pulled in[to the employee parking lot] to ask Mr. Ballou what was wrong and what was going on," and that the Jaquez-Mirabal incident demonstrates that Jaquez did not end up in the parking lot essentially by accident, but rather went with a specific motive; Ballou does not spell out what this motive is, but it presumably involves harassing or attacking Ballou.  Tr. at 47:11-48:7 (Benjamin).  Ballou next argued that the rule 403 standard is modified -- from one in which prejudice must substantially outweigh probative value to one in which probative value must outweigh prejudice -- when the rule 404(b) proponent is the prosecution in a criminal case.  <u>See</u> Tr. at 48:9-13 (Benjamin).  The Court noted that it did not believe that proposition was true in the Tenth Circuit, but that it would look into the matter.  <u>See</u> Tr. at 48:18-49:4 (Court).  The Court then stated that it was inclined to allow the testimony, but not the supporting documents, under rule 404(b), to show the victim's intent, absence of mistake, or lack of accident.  <u>See</u> Tr. at 51:21-52:15 (Court).

The Court announced its proposed ruling on a number of other exhibits: (i) it would exclude Exhibit F, the police report from the Jaquez-Mirabal incident; (ii) it would exclude Exhibits D and E, Ballou's prior reports lodging complaints against Jaquez; (iii) it would exclude Exhibit B, the August 1, 2012, letter to Jaquez; (iv) it would admit Exhibit C, a one-page contract form that Jaquez refused to sign; and (v) it would require redaction of the cover page and the eighth paragraph -- which refer to Jaquez' prior acts and to a "record flag" being placed on Jaquez' file -- of Exhibit J, the lengthy letter from the VA Hospital's deputy chief of staff to Jaquez.  See Tr. at 55:18-56:7 (Court).  The United States agreed with the Court's proposed ruling.  See Tr. at 56:8-16 (Cairns, Court).  Ballou also did not object to the Court's proposed ruling.  The Court also stated that it was inclined to exclude evidence of Jaquez' prior misdemeanor conviction, which Ballou agreed was correct, "[u]nless Harry Jaquez says something that makes that relevant."  Tr. at 56:21-57:14 (Benjamin).  Last, the parties agreed that the Third MIL no longer required much discussion, because the Court's rulings on the First MIL and Second MIL items sufficiently clarified which past acts and incidents could be referenced.  See Tr. at 57:15-20 (Court, Cairns).

## LAW REGARDING RELEVANT EVIDENCE UNDER RULE 401

The threshold issue in determining the admissibility of evidence is relevance.  As a baseline, under the Federal Rules of Evidence, all evidence that is relevant is admissible -- unless another law or rule excludes the evidence -- and any evidence that is not relevant is not admissible.  See Fed. R. Evid. 402.  The standard for relevance is liberal.  See United States v. Leonard, 439 F.3d 648, 651 (10th Cir. 2006)("Rule 401 is a liberal standard.")(citing United States v. McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998)).  The evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

See United States v. Leonard, 439 F.3d at 651. "[A] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," but it only needs to have "any tendency" to do so. United States v. Jordan, 485 F.3d 1214, 1218 (10th Cir. 2007). See United States v. Leonard, 439 F.3d at 651; United States v. McVeigh, 153 F.3d at 1190. Although the threshold burden is low, the rules do "not sanction the carte blanche admission of whatever evidence a defendant would like. The trial judge is the gatekeeper under the Rules of Evidence." United States v. Jordan, 485 F.3d at 1218.

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)). The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(omission in case but not quoted treatise)(quoting 1 Steven A. Childress & Martha S. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).  See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).  Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 543 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 453 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee's notes).

## LAW REGARDING RULE 404(b)

Rule 404(b) of the Federal Rules of Evidence provides:

**(b)     Crimes, Wrongs, or Other Acts.**

> **(1)     Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> **(2)     Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

>> (A)     provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

>> (B)     do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b) (emphasis in original).  Rule 404(b) states that evidence of other crimes or wrongs may not be introduced against a person to show that, in the case at hand, he or she acted in conformity with that prior behavior.  The same evidence, however, may be admissible for other purposes.  Permissible purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  See Fed. R. Evid. 404(b). The Supreme Court has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988). The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . .  This test requires that: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is

substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)).   See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

## 1.   Rule 404(b) Evidence Introduced by the Prosecution in a Criminal Case.

Although rule 404(b) applies in both civil and criminal cases, it obtains special importance in criminal cases, where it "is typically used by prosecutors seeking to rely on a criminal defendant's prior bad act as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in the crime charged."   United States v. Montelongo, 420 F.3d at 1174.   The Tenth Circuit has stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom."   United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).   "[A] broad statement merely invoking or restating Rule 404(b) will not suffice."   United States v. Youts, 229 F.3d at 1317.

Uncharged, unrelated crimes or bad acts may be probative to show motive, intent and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense, if the uncharged acts are similar to the charged crime and sufficiently close in time.   See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to

the transactions with which he was charged").  This similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'"  United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978).  See United States v. Bonnett, 877 F.2d at 1461.

The Tenth Circuit in United States v. Johnson, 42 F.3d 1312 (10th Cir. 1994), explained that rule 404(b) does not apply to uncharged acts that are part of the conduct with which a defendant is charged:

> Rule 404(b) only applies to evidence of acts extrinsic to the charged crime.  An uncharged act may not be extrinsic if: (1) it was part of the scheme for which a defendant is being prosecuted . . . or (2) it was "inextricably intertwined" with the charged crime such that a witness' testimony "would have been confusing and incomplete without the prior act."

United States v. Johnson, 42 F.3d at 1316 (citations omitted).

## 2.  "Reverse" 404(b): Evidence That the Defendant Introduces in a Criminal Case.

Rule 404(b) is the modern equivalent -- now extended to civil cases as well as criminal -- of the common-law protection of the criminal defendant from risking conviction on the basis of evidence of the defendant's character.  See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37, 439 (1991).  In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

- 16 -

United States v. Phillips, 599 F.2d at 136.

Both these rationales appear at first glance to be one-sided, i.e., they should preclude the introduction of the defendant's prior bad acts, but they should not preclude the defendant's introduction of prior bad acts committed by third parties, namely the alleged victim. Accordingly, some courts have found that the standards for admission of evidence to show conduct in conformity with prior conduct relaxed when the defendant attempts to offer the rule 404(b) evidence. The United States Court of Appeals for the Second Circuit in United States v. Aboumoussallem, 726 F.2d 906 (2d Cir. 1984)(Newman, J.)(joined by Feinberg, C.J., and Friendly, J.), undertook an early analysis of the admissibility of prior crimes evidence that the defendant proffers. The Second Circuit noted:

> [W]e believe the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when the prosecution uses such evidence as a sword. The prosecution in the Anglo-American tradition, may not ordinarily offer evidence of a defendant's prior wrongdoing for the purpose of persuading the jury that the defendant has a propensity for crime and is therefore likely to have committed the offense for which he stands trial. As Dean Wigmore points out, the evidence "is objectionable not because it has no appreciable value but because it has too much." Presumably, the "too much" argument means that a guilty person, and, of far more serious concern, an innocent person, may be convinced primarily because of the jury's willingness to assume his present guilty from his prior misdeed. Wigmore also identifies objections based on the risk that the jury will convict because the defendant may not have been punished for his prior offenses and the injustice of requiring the defendant to defend against a series of accusations. . . . However, the risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense. In such cases the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense.

United States v. Aboumoussallem, 726 F.2d at 911-12 (footnotes omitted)(citations omitted).

Similarly, the United States Court of Appeals for the Fifth Circuit in United States v. Krezdorn, 639 F.2d 1327 (5th Cir. 1981), noted that

- 17 -

> [t]he extrinsic acts rule is based on the theory that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense.  Consequently, the only purpose served by extrinsic offense evidence is to demonstrate the propensity of the defendant to act in a certain way, the evidence must be excluded.  When, however, the extrinsic offense was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith.  When the evidence will not impugn the defendant's character, the policies underlining 404(b) are inapplicable.

639 F.2d at 1332-33 (citations omitted)(internal quotation marks omitted).  In addition to the Second and Fifth Circuits, the United States Courts of Appeals for the First, Third, Seventh, and Eleventh Circuits have determined that rule 404(b) is inapplicable to the admissibility of evidence of acts of third parties.  See United States v. Reed, 259 F.3d 631, 634 (7th Cir. 2001)("In deciding whether to admit such evidence, a district court should balance the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time and confusion of the issues under Rule 403."); United States v. Morano, 697 F.2d 923, 926 (11th Cir. 1993)("But although Rule 404(b) does not control this situation, the exceptions listed in the Rule should be considered in weighing the balance between the relevancy of this evidence and its prejudice under Rule 403."); United States v. Steven, 935 F.2d 1380, 1401-1406 (3d Cir. 1991)("[A] defendant may introduce 'reverse 404(b)' evidence so long as its probative value under Rule 401 is not substantially outweighed by Rule 403 considerations."); United States v. Gonzales-Sanchez, 825 F.2d 572, 582 n.25 (1st Cir. 1987)("Inasmuch as this evidence does not concern past criminal activity of [the defendant], Rule 404(b) is inapplicable.").  In United States v. Stevens, 935 F.2d 1380 (3d Cir. 1991)(Becker, J.)(joined by Nygaard & Pollack, JJ.), the Third Circuit also held that a lowered standard of similarity between the crime before the federal court and the "other crimes evidence" governs "reverse 404(b)" evidence, because prejudice to the defendant is not a factor.  935 F.2d at 1403.

The Tenth Circuit has held that rule 404(b)'s prohibition applies to a defendant who wishes to introduce evidence of wrongdoing by another to establish his innocence.  See United States v. Puckett, 692 F.2d 663, 671 (10th Cir. 1982)(McWilliams, J.)(joined by Seth, C.J., and Brimmer, J.).   In United States v. Puckett, the co-defendant, Mauzy, sought to introduce evidence that his co-Defendant, Puckett, had "conned" him in transactions unrelated and dissimilar to the crimes charged in the indictment.  692 F.2d at 670.   The trial court did not allow Mauzy to present the evidence.  See 692 F.2d at 670.  "The trial court did not permit Mauzy . . . to call certain witnesses who would testify that they too had been 'conned' by Puckett in transactions unrelated and dissimilar to the crimes charged in the indictment."  692 F.2d at 670.

Mauzy contended on appeal in United States v. Puckett that "the refusal to admit this evidence violates his due process right to present a defense."  692 F.2d at 670-71.  The Tenth Circuit affirmed.  See 692 F.2d at 671.  The Tenth Circuit noted that the 404(b) evidence offered by Mauzy pertained to activities by Puckett that were "unrelated and dissimilar to the charges alleged in the indictment."  United States v. Puckett, 692 F.2d at 670.  Mauzy argued that rule 404(b) did not govern the admissibility of the evidence, because it did not apply "to situations in which a defendant wishes to introduce evidence of wrongdoing by another person in order to establish his own innocence."  692 F.2d at 671.  The Tenth Circuit indicated that it was "not inclined to interpret [rule 404(b)] so narrowly."  692 F.2d at 671.  The Tenth Circuit explained that its review of the "Advisory Committee Notes on the Proposed Rules indicate that the members of the committee were concerned not only with the prejudicial impact to a defendant in admission of extrinsic acts as evidence, but also with its limited probative value."  692 F.2d at 671.  The Tenth Circuit held that the trial court properly rejected the evidence as irrelevant,

"[p]articularly . . . [where] the evidence offered by Mauzy pertained to activities by [his co-conspirator that were] unrelated and dissimilar to the charges alleged in the indictment."  692 F.2d at 671.

Since United States v. Puckett, the Tenth Circuit has considered the admissibility of prior acts that the defendant proffers, often referred to as "reverse 404(b)" evidence.  In United States v. Montelongo, 420 F.3d 1169 (10th Cir. 2005), police found ninety-three kilograms of marijuana in the sleeping compartment of the semi-truck that the defendants were driving.  See 420 F.3d at 1171.  The owner of the truck testified for the United States, and stated that he "had inspected the truck just before [the defendants] picked it up and had found no marijuana in it." 420 F.3d  at 1172.  The defendants then made a "reverse 404(b)" argument.  United States v. Montelongo, 420 F.3d at 1174.

The relevant issue in United States v. Montelongo was whether the defendants could cross examine the owner of the truck that the defendants were driving about a prior incident which occurred "a few months" earlier.  420 F.3d at 1171.  The defendants sought to introduce evidence of a prior incident which occurred a few months before their arrest and which involved marijuana that was found in the sleeping compartment in a different semi-truck that the truck owner possessed.  See 420 F.3d at 1176.  The Tenth Circuit reversed the trial court's refusal to allow cross examination by the defendants regarding "the fact that thirty-four pounds of marijuana were found in duffle bags in the sleeping compartment of a truck owned by [the government witness] just a few months prior to the Defendants' arrests for nearly identical conduct" to defend against a conspiracy to distribute more than fifty grams of marijuana.  420 F.3d at 1176.

The Tenth Circuit began its analysis in United States v. Montelongo by noting that rule 404(b)

> is typically used by prosecutors seeking to rely on a criminal defendant's prior bad act as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in the crime charged.  The Rule is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible "for defensive purposes if it tends, alone, or with other evidence, to negate the defendant's guilt of the crime charged against him."

420 F.3d at 1174 (quoting Agushi v. Duerr, 196 F.3d 754, 760 (7th Cir. 1999)).  The Tenth Circuit also noted that "[o]ther circuit courts addressing the issue hold that admissibility of reverse 404(b) evidence depends on a 'straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues.'"  420 F.3d at 1174 (quoting United States v. Stevens, 935 F.2d at 1404-1405). The Tenth Circuit held that the evidence of the marijuana previously found in another truck owned by the truck owner was relevant to the defendants' defense that they had no knowledge of the marijuana packed in the truck they were driving.  See United States v. Montelongo, 420 F.3d at 1174.   The Tenth Circuit noted that, "[i]n this way, the previous case is relevant as it tends to make it less probable that the defendants knowingly possessed the marijuana or that they knowingly and voluntarily involved themselves in a drug conspiracy."  420 F.3d at 1173.  The Tenth Circuit looked at the similarities between the charged matter and the previous incident.  See United States v. Montelongo, 420 F.3d at 1174-75.  The Tenth Circuit noted that there were several similarities between the two crimes and that the jury could believe that the owner had packed the marijuana in the semi-truck. See 420 F.3d at 1174-74.

Specifically, the Tenth Circuit in United States v. Montelongo noted "the similarities between the two crimes and their temporal proximity . . . makes th[e] evidence probative."  420 F.3d at 1174.   The Tenth Circuit based its opinion on common facts with the prior incident, such

as: (i) both trucks were owned by the same person; (ii) the marijuana was packed in duffle bags; and (iii) the marijuana was hidden in the sleeping compartment of the cabin of both tractors. See 420 F.3d at 1172.  The Tenth Circuit noted that "'a lower standard of similarity [between the crime at issue and 'other crimes' evidence] should govern 'reverse 404(b)' evidence because prejudice to the defendant is not a factor." United States v. Montelongo, 420 F.3d at 1174-75 (quoting United States v. Stevens, 935 F.2d at 1404).

Last, the Tenth Circuit noted that the relevance of the proffered evidence was "not substantially outweighed by the risk of confusing the jury or the potential waste of time." United States v. Montelongo, 420 F.3d at 1175.  It noted that there was no danger of the jurors being distracted from the real issues in the case because of the similarities between the charged crime and the previous incident. See 420 F.3d at 1175.  "To the contrary, [the 404(b) evidence] would have highlighted the central issue at trial -- namely, which man was responsible for the contraband." 420 F.3d at 1175.  The Tenth Circuit focused on the question of the evidence's admissibility in the context of the protections that the Sixth Amendment's Confrontation Clause and cross-examination afford, and found that the "District Court erred in preventing the defendants from cross-examining [the truck owner] based on Rule 404(b)." United States v. Montelongo, 420 F.3d at 1175.

In Agushi v. Duerr, the United States Court of Appeals for the Seventh Circuit decided, as a matter of first impression, that rule 404(b) applies to acts of third parties. See 196 F.3d at 760.  The Seventh Circuit began its analysis by noting that "[r]ule 404(b) speaks not of the parties to a case but of a 'person.'" Agushi v. Duerr, 196 F.3d at 760 (quoting Fed. R. Evid. 404(b)).  The Seventh Circuit noted that "[e]vidence regarding other crimes is admissible for defensive purposes if it 'tends, alone or with other evidence, to negate [the defendant's] guilt of

the crime charged against him.'"  196 F.3d at 760 (quoting United States v. Stevens, 935 F.2d at

1404)).  The Seventh Circuit explained that, although Huddleston v. United States, 485 U.S. 681

(1988), "involved a situation in which the defendant was the actor, the Court strongly suggested

that Rule 404(b) should be applied to any *actor*."  Agushi v. Duerr, 196 F.3d at 760 (emphasis in

original)(relying on Huddleston v. United States, 485 U.S. at 685-86 ("Extrinsic acts evidence

may be critical to the establishment of the truth as to a disputed issue, especially when that issue

involves the actor's state of mind and the only means of ascertaining that mental state is by

drawing inferences from conduct.")).  The Seventh Circuit concluded that, "[b]ased on the

Supreme Court's guidance, our sister circuit's reasoning . . . as well as the very language

contained in Rule 404(b), we hold that Rule 404(b) does apply to third parties."  Agushi v. Duerr,

196 F.3d at 760.

        In 2005, the Seventh Circuit, however, disagreed with a district court's evidentiary ruling

that held the defense to as rigorous a 404(b) standard as the United States.  See United States v.

Seals, 419 F.3d 600, 607 (7th Cir. 2005)(Bauer, J.)(joined by Posner & Ripple, JJ.)("Contrary to

the district court's statement, the defense is not held to as rigorous of a standard as the

government in introducing reverse 404(b) evidence.")(citing Agushi v. Duerr, 196 F.3d at 760).

The Seventh Circuit affirmed, however, the district court's decision to exclude the proffered

evidence, because it was irrelevant and inadmissible.  See  United States v. Seals, 419 F.3d at

607.  It noted that the similarities between the charged conduct and the previous incident were

generic, because the underlying facts were dissimilar.  See 419 F.3d at 607.  The Seventh Circuit

explained that, although "the legal standard for admitting reverse 404(b) evidence is relatively

lenient, the evidence still must be relevant."  419 F.3d at 607.

In <u>United States v. McCourt</u>, 925 F.2d 1229 (9th Cir. 1991)(Rymer, J.)(joined by Hall & Norris, JJ.), the United States Court of Appeals for the Ninth Circuit recognized that rule 404(b) makes no distinction between defendants and third parties in excluding prior-acts evidence to show criminal propensity or as a basis for suggesting the inference that certain conduct was in conformity with it.  <u>See</u> 925 F.2d at 1232 ("Because Rule 404(b) plainly proscribes other crimes evidence of 'a person,' it cannot reasonably be construed as extending only to 'an accused.'")(quoting Fed. R. Evid. 404(b)).   The Ninth Circuit concluded, however, that no exception in rule 404(a) permits the use of evidence to show a third person's character for the inference that this person acted in conformity with his character and committed the crime with which defendant is charged.  <u>See</u> 925 F.2d at 1231-32 n.2 (citing 2 Jack B. Weinstein, John H. Mansfield, Norman Abrams & Margaret A. Berger, <u>Evidence</u> ¶ 404[04], at 404-39-40 (1989)).

In <u>United States v. Stevens</u>, the defendant sought to introduce testimony by a victim of a crime different from the one with which the defendant was charged where the victim "was the victim of a crime which was so similar to the instant crime that the investigating officers believed that the same individual had committed both" and the victim "would have testified that he, unlike the [other] victims . . . did not identify [the defendant] as his assailant."  935 F.2d at 1383.  "The critical question is, of course, one of degree of similarity."  935 F.2d at 1401.  The United States Court of Appeals for the Third Circuit held that the "district court imposed too stringent a standard of similarity on [the defendant]."  935 F.2d at 1404.  The Third Circuit held that "a lower standard of similarity should govern 'reverse 404(b)' evidence because prejudice to the defendant is not a factor."  <u>United States v. Stevens</u>, 935 F.2d at 1404.  The Third Circuit then stated that "a defendant may introduce 'reverse 404(b)' evidence so long as its probative value under Rule 401 is not substantially outweighed by Rule 403 considerations."  935 F.2d at

1405.  The Third Circuit rejected the United States' contention that a defendant may offer rule

404(b) evidence only under "hard and fast preconditions," and stated:

> More specifically, the defendant, in order to introduce other crimes evidence, need not show that there has been more than one similar crime, that he has been misidentified as the assailant in a similar crime, or that the other crime was sufficiently similar to be called a "signature" crime.  These criteria, although relevant to measuring the probative value of the defendant's proffer, should not be erected as absolute barriers to its admission.  Rather, a defendant must demonstrate that the "reverse 404(b)" evidence has a tendency to negate his guilt, and that it passes the Rule 403 balancing test.

United States v. Stevens, 935 F.2d at 1405.  The Third Circuit determined that the defendant's

proffer was relevant under rule 401, because it made his guilt less probable.  See 935 F.2d at

1405-1406.  It then determined that the proffer did not present a risk of mini-trials or obstruction

to the orderly progress of trial.  See 935 F.2d at 1405-06.  The Third Circuit emphasized that its

"resolution of this issue is informed by [its] general belief that a criminal defendant should be

able to advance any evidence that, first, rationally tends to disprove his guilt, and second, passes

the Rule 403 balancing test."  United States v. Stevens, 935 F.2d at 1406.

The Court addressed a criminal defendant's introduction of rule 404(b) evidence in

United States v. Moreau, No. CR 07-0388 JB, 2008 WL 2229467 (D.N.M. Mar. 12,

2008)(Browning, J.).   In that case, a cooperating witness accused the defendant, Sygenstz

Moreau, of engaging in a large-scale drug transaction with him.  See 2008 WL 2229467, at *1-2.

Law enforcement officers had arrested Moreau driving a tractor-trailer rig through Gallup, New

Mexico; the rig had roughly 2,700 pounds of marihuana hidden away in the trailer, and also

contained several pallets of cloth fabric that Moreau had purchased from the confidential witness

earlier that day.  See 2008 WL 2229467, at *2.  The cooperating witness said that Moreau had

loaded the marihuana into the trailer from the witness' warehouse, using the pallets of cloth as a

pretext for the visit, to help physically obscure the marihuana, and so that the trailer would have

something else in it other than the marihuana.  See 2008 WL 2229467, at *2.  Moreau, however, argued that the witness ran the entire operation alone, that the witness had loaded both the marihuana and the cloth pallets onto the truck, and that Moreau had no idea he was hauling marihuana.  See 2008 WL 2229467, at *2.  Moreau sought to introduce evidence of three prior incidents in which law enforcement officers discovered the cooperating witness in possession of large quantities of marihuana.  See 2008 WL 2229467, at *1.  The Court ruled that the prior incidents were admissible under rule 404(b) to show that the witness "had the opportunity, plan, preparation, and knowledge to operate a sophisticated marihuana operation."  United States v. Moreau, 2008 WL 2229467, at *13 (emphasis omitted and capitalization altered for readability). This inference -- that the witness could have planned and executed the marihuana scheme without Moreau's knowledge -- bolstered Moreau's assertion that he was unaware that the marihuana was in the trailer -- because, after all, the marihuana got there somehow, and a plausible alternative explanation makes Moreau's contention more probable than it would be without the plausible alternative explanation.  See 2008 WL 2229467, at *14-15.

**LAW REGARDING THE CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE IN A CRIMINAL CASE**

Both the Fifth and Sixth Amendments protect a defendant's right to have a meaningful opportunity to present a defense.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986).  The Tenth Circuit has explained:

> The Fifth (or Fourteenth if a state is involved) and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses. The Supreme Court's broad reading of the Sixth Amendment's Compulsory Process Clause, establish[es], at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.

United States v. Serrano, 406 F.3d 1208, 1215 (10th Cir. 2005)(citations omitted)(internal quotation marks omitted).  The Tenth Circuit clarified that "[a] defendant's right to present a defense, however, is not absolute."  United States v. Serrano, 406 F.3d at 1215.  The Tenth Circuit explained that a defendant's right to present a defense does not displace traditional testimonial privileges.  See 406 F.3d at 1215.  "A defendant has a right based on the Fifth and Sixth Amendments to testify and to call witnesses in his favor.  These rights are not without limitation, however."  United States v. Talamante, 981 F.2d 1153, 1157 (10th Cir. 1992).  See United States v. Wilson, 307 F.3d 596, 601 (7th Cir. 2002)(holding that the trial court's exclusion of reverse 404(b) evidence did not violate a defendant's Sixth Amendment right to present a defense, because "the evidence that [the defendant] wished to offer would not have played a major role in disproving his guilt").

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."  Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18, 2013)(Browning, J.)(citing Fed. R. Evid. 802).  Under rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."  United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999).  A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.  See United States v. Caraway, 534 F.3d 1290, 1299

(10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").

"'[T]estimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement.'"  Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 2013 WL 311846, at *19 (original alterations omitted)(quoting Creaghe v. Iowa Home Mut. Cas. Co., 323 F.2d 981, 984 (10th Cir. 1963)).  Statements offered not to prove the truth of the statements, but rather "offered for the effect on the listener . . . are generally not hearsay."  Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993).  See United States v. Smalls, 605 F.3d 765, 785 n.18 (10th Cir. 2010)("[S]tatements offered for their effect on the listener are not hearsay.").  Thus, "[l]egally operative statements -- statements [that] have legal effect by the mere fact of their statement -- are generally not for the 'truth of the matter asserted,' but rather to show the fact of the statement being made and for the effect of the statement on the hearer."  Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 2013 WL 311846, at *19 (original alterations omitted)(internal quotation marks omitted)(quoting Barner v. City of Harvey, 95 C 3316, 1998 WL 664951, at *2 (N.D. Ill. Sept. 18, 1998)).

In Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., the plaintiffs objected to the defendants' use of documents relating to third parties' bankruptcy proceedings, asserting that the statements that the defendants wished to use were inadmissible hearsay statements.  See 2013 WL 311846, at *19.  The defendants asserted, however, that they intended to offer the bankruptcy proceedings to show that the plaintiffs had notice of the third parties' bankruptcy filings and did not assert claims against the third parties in the third parties' bankruptcy proceedings; the defendants were also offering the proceedings, including settlement stipulations,

to show that the plaintiffs failed to mitigate their damages.  See 2013 WL 311846, at *19.  The

Court concluded that, to the extent that the defendants were offering the documents to show that

the plaintiffs had notice of the third parties' bankruptcy filings, the defendants were offering the

statements for the non-hearsay purpose "to show the effect that the documents had upon the

listener -- or in this case, the reader."  2013 WL 311846, at *19.  The Court additionally

concluded:

> [T]o the extent that [the defendants] are offering the documents to show that the
> parties to this action reached a legally binding agreement to discharge any claims
> against the [the third parties] that they might have for less than the full amount of
> money owed to them by the [third parties], the statements are not being offered
> for the truth of the matter asserted, but rather as evidence of the legal effect of the
> agreement, the statements are "legally operative statements" and are thus not
> hearsay.

2013 WL 311846, at *19 (citing Barner v. City of Harvey, 1998 WL 664951, at *2).

## LAW REGARDING RULE 801(d)(2)(C) AND (d)(2)(D)

Federal Rule of Evidence 801(d)(2)(C) provides for a statement to be admissible as non-

hearsay if it "was made by a person whom the party authorized to make a statement on the

subject."  Fed. R. Evid. 801(d)(2)(C).  Courts have historically applied agency law to determine

whether the declarant was authorized by the party to make the statement at issue.  See Grace

United Methodist Church v. City of Cheyenne, 451 F.3d 643, 666-67 (10th Cir. 2005)(finding

that a bishop's role within the United Methodist Church, which included the authority to assign

and remove local pastors at will, to supervise pastors' work, to administer funds to local

churches, and to retain control over church property if the United Methodist Church were to go

out of business made the bishop a "representative of or a party authorized to speak for" the local

United Methodist Church that was a party to the action, and the bishop's statements were thus

admissible as non-hearsay under rule 801(d)(2)(C)).   See also Fed. R. Evid. 801(d)(2)(C)

advisory committee's notes (describing the relationship that rule 801(d)(2)(C) contemplates as a "principal" and "agent" relationship).   The Tenth Circuit has held that the president of a corporation is "authorized" to make statements regarding hiring and termination, and thus a presidents' statements on those subjects are admissible as nonhearsay under rule 801(d)(2)(C). Fischer v. Forestwood. Co., Inc., 525 F.3d 972, 984 (10th Cir. 2008)("[B]ecause [the declarant] was president of Forestwood at the time of the conversations . . . he was 'authorized' by Forestwood 'to make a statement concerning' hiring and firing."   (quoting Fed. R. Evid. 801(d)(2)(C) before the 2011 amendments)).

Similarly, the Court has held that the United States has authorized the United States' Attorney's Office to make a statement regarding a defendant's guilt or innocence in a closing argument for a case that the United States' Attorney's Office prosecuted.   See United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1120-21 (D.N.M. 2012)(Browning, J.).   The Court noted that the rule contemplates the admission of statements which a principal-agency relationship authorizes.   The Court found that "treating government attorneys, particularly Department of Justice attorneys, as agents of the United States is the correct approach."   854 F. Supp. 2d at 1119.   Because the United States' Attorney's Office is within the Department of Justice, and the United States has authorized the United States Attorney's Office to prosecute criminal matters, which includes, within the scope of that agency, making statements in federal court, the Court concluded that United State's Attorneys should be considered authorized to "prosecute all criminal offenses against the United States."   854 F. Supp. 2d at 1119.   On that basis, the Court found that statements, which an Assistant United States' Attorney made in closing arguments, qualified as non-hearsay under rule 801(d)(2)(C).   See 854 F. Supp. 2d at 1122.

Rule 801(d)(2)(D) sets forth a similar, but broader, provision, excluding from the definition of "hearsay" those statements made by a "party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The Tenth Circuit has broken this exclusion into a three-part test for admissibility under rule 801(d)(2)(D). See Fischer v. Forestwood Co., Inc., 525 F.3d at 984-85.[5] First, the party seeking to admit the statement must establish the existence of the employment relationship independent of the declarant's statement offered as evidence. Second, the statement must be made during the existence of the declarant's "agency or employment." Fischer v. Forestwood Co., Inc., 525 F.3d at 984 (quoting Fed. R. Evid. 801(d)(2)(D)). Last, the statement must concern a matter within the scope of declarant's employment or agency. See Fischer v. Forestwood. Co., Inc., 525 F.3d at 984.

The declarant need not be available for cross-examination for the statement to be admissible under rule 801(d)(2)(D). See Fischer v. Forestwood. Co., Inc., 525 F.3d at 984-85. See also, e.g., Savarese v. Agriss, 883 F.2d 1194, 1201 (3d Cir. 1989)("[A] statement by a declarant, deceased at the time of trial, may be admissible under . . . Fed. R. Evid. 801(d)(2)(D)."); Auto-Owners Ins. Co. v. Jensen, 667 F.2d 714, 722 (8th Cir. 1981)(explaining that a party opponent's admissions do not need to be subjected to cross-examination to be admissible). The Tenth Circuit notes that cross-examination is not required, because admissibility of a party opponent's statements, as a logical expression of the philosophy of the

---

[5]Although the Tenth Circuit articulated the three-part test in Fischer v. Forestwood Co., Inc., before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 may still be used in cases after the restyling. Fed. R. Evid. 801 advisory committee's notes on 2011 amendments.

adversary system, is closely linked to the personal freedom and responsibility that are part of life in a free society.  See Fischer v. Forestwood Co., Inc., 525 F.3d at 985.  "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system . . . .  No guarantee of trustworthiness is required in the case of an admission."  Fed. R. Evid. 801 advisory committee's notes.[6]

The Tenth Circuit dealt with the meaning of "within the scope of" an employment or agency relationship in Rainbow Travel Serv. v. Hilton Hotels Corp., 896 F.2d 1233 (10th Cir. 1990).  In that case, a travel service sued the Hilton Hotels for breach of a contract. The travel service had arranged for its clients to stay at the Fointainebleu Hotel in Miami Beach, Florida, but upon arrival, the clients found that the hotel was over booked and the clients were transported by shuttle bus to a less desirable hotel.  Some of the clients were allowed to testify at trial, and they recited statements made by the shuttle bus driver who transported the clients.  The "driver told the customers his job was to transport guests who had been bumped from the Fointainebleu and to try to keep them happy."  896 F.2d at 1242.  Hilton Hotels objected to the admission of these statements on hearsay grounds, arguing that the bus driver was not qualified to make statements about the hotel's reservation practices.  The district court admitted the statements under rule 801(d)(2)(D), and the Tenth Circuit held that the admission was proper. The Tenth Circuit held that the statements were "all related to the scope of his employment with the hotel."  896 F.2d at 1242.

---

[6]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d) and uses the term "statements" instead.  Fed. R. Evid. 801(d).  This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made."  Fed. R. Evid. 801, advisory committee's notes on 2011 Amendments.

Applying this precedent, the Tenth Circuit has also found that statements made by "a high corporate officer . . . discussing the treatment of his subordinate . . . made while [the officer] was still an agent or employee of the company" are admissible under rule 801(d)(2)(D) as non-hearsay, even though the officer did not participate in the treatment of the subordinate discussed in the statements.  Abuan v. Level 3 Commc'ns, Inc., 353 F.3d 1158, 1171-72 (10th Cir. 2003). Rather than participating in the treatment of his subordinate, the officer disapproved of the corporation's action towards his subordinate and left the company, because he was dissatisfied with the way his subordinate had been treated.  See 353 F.3d at 1166.  The defendant in Abuan v. Level 3 Commcn's, Inc. argued that the officer's statements could be admissible only if the officer had participated in the employment decision at issue, but the Tenth Circuit noted that the defendant was unable to cite any authority in support of this argument.  See 353 F.3d at 1171. The Tenth Circuit held that "[g]iven our ruling in Rainbow Travel . . . a vice president's statements concerning his company's unethical treatment of a direct subordinate" may be admitted under rule 801(d)(2)(D).  353 F.3d at 1172.  Similarly, the Tenth Circuit has held that statements which a company president made regarding the re-hiring of an employee who resigned from the company are admissible under rule 801(d)(2)(D).  See Fischer v. Forestwood, Co., Inc., 525 F.3d at 977, 984.  The Tenth Circuit explained that "because [the declarant] was president of [the corporation] at the time of the conversations . . . he was acting as an agent for [the corporation] and making statements within the scope of his authority."  525 F.3d at 984.

In Jaramillo v. Colorado Judicial Department, the plaintiff, Kristin Jaramillo, brought a disparate treatment claim and sought to introduce the statements of a co-employee who received the Probation Officer position for which the plaintiff applied instead of her.  See 427 F.3d at 1306, 1313.  Another applicant for the same position, Arturo Villo, had testified that the

employee who received the position, Brian Sandoval, told Villa that a supervisor had promised Sandoval the Probation Officer position before it became available.  See 427 F.3d at 1313.  Other employees had also testified that a rumor had circulated in the facility that Sandoval was promised the position.  However, "[n]one of these individuals claimed to have gotten their information from management-level employees."  427 F.3d at 1314.  Jaramillo nonetheless argued that these statements should be admissible under rule 801(d)(2)(D).  Citing an opinion from the United States Court of Appeals for the Seventh Circuit, the Tenth Circuit stated: "In order for a statement to qualify as an admission of a party opponent, the speaker 'must be involved in the decisionmaking process affecting the employment action involved.'"  427 F.3d at 1314 (quoting Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003)).  Because neither Sandoval nor any of the other witnesses were involved in the hiring or promotion process, as they were all Jaramillo's co-employees, the statements were outside the scope of their employment and not admissible as statements by a party opponent.  See 427 F.3d at 1314.

        The Court has previously allowed a party seeking to admit a statement under rule 801(d)(2)(D) to provide foundation testimony at trial that would show the statement is within the rule's provisions.  See Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch., Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2363147 (D.N.M. Jun. 27, 2007)(Browning, J.).  The plaintiff in Trujillo v. Board of Education of Albuquerque Public Schools brought a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e-2, and 2000e-5, for retaliation against Albuquerque Public Schools, and sought to introduce the statements of a retired instructor who had supervised the plaintiff while the plaintiff worked for Albuquerque Public Schools.  See 2007 WL 2363147, at *1, *3-4.  Albuquerque Public Schools

- 34 -

sought to exclude the statements as hearsay not within any exception.  See 2007 WL 2363147, at *1.  The Court denied Albuquerque Public School's motion in limine, on the condition that the plaintiff would "first establish[] they were made in the scope" of the retired instructor's employment and could show how he was involved in the decision to hire another person for the position the plaintiff had sought.  2007 WL 2363147, at *4.

## ANALYSIS

The Court will allow testimony -- but not documentary evidence -- about the three prior altercations between Jaquez and VA Hospital staff members, but the Court will exclude on hearsay grounds most, but not all, of the documents Ballou seeks to admit.  This ruling comports with the Court's tentative ruling at the hearing.  See Tr. at 55:18-56:7 (Court).  Testimony about Jaquez' prior altercations is admissible under the relaxed "reverse" rule 404(b) standard to show Ballou's state of mind -- in particular, his belief regarding the necessity and amount of force he needed to use against Jaquez to defend himself, and the reasonableness of that belief -- as well as to show Jaquez' animus towards the VA Hospital staff, including Ballou specifically.

Documents, however, are another story.  When referring to the documents that Ballou seeks to admit and that the United States seeks to exclude, the Court will refer to each document by both the exhibit letter used in the Response and to the exhibit number used in Ballou's exhibit list.[7]  See Gary Ballou's Exhibit List at 1, filed October 8, 2014 (Doc. 31).  Neither the video

---

[7]The Court will refer to the May 18, 2012, letter from the VA Hospital's business manager to Jaquez as Exhibit A/4.  The Court will refer to the August 1, 2012, letter from the VA Hospital's chief of staff to Jaquez as Exhibit B/5.  The Court will refer to the contract form, dated August 1, 2012, that Jaquez refused to sign, as Exhibit C/6.  The Court will refer to Ballou's typed report complaining that Jaquez struck him with a cane and told him that Jaquez "need[s] to kick [Ballou's] ass," dated December 26, 2010, as Exhibit D/3.  The Court will refer to Ballou's undated handwritten report complaining that Jaquez called him "an asshole[ who] need[s] to have [his] ass kicked" as Exhibit E/2.  The Court will refer to the police report from

- 35 -

excerpts of the VA Hospital parking lot nor Jaquez' misdemeanor conviction are attached to the Response, so the Court will refer to them by their Exhibit numbers: 9 and 10, respectively.  See Gary Ballou's Exhibit List at 1.  Most of the documents on Ballou's exhibit list have no relevance outside of their hearsay use -- or, at least, the prejudicial impact of their hearsay use substantially outweighs the probative value of their non-hearsay use -- and the Court excludes them accordingly.  Exhibits C/6 and portions of Exhibit J/8, however, are relevant for reasons other than the truth of the matters they assert, and the Court will thus allow their admission. Last, the Court will exclude Exhibit 10, Jaquez' misdemeanor battery judgment, because it is not proper impeachment material under rule 609 nor has Ballou advanced any rule 404(b) purpose for its admission, and will allow the admission of Exhibit 10, video excerpts from the VA Hospital parking lot, because the United States has not demonstrated that it is not relevant.

## I.   TESTIMONY, BUT NOT DOCUMENTATION, OF THE THREE PRIOR INCIDENTS IN WHICH JAQUEZ ALLEGEDLY ASSAULTED OR INTIMIDATED VA HOSPITAL STAFF IS ADMISSIBLE UNDER RULE 404(b).

Ballou may call witnesses to testify about the three prior altercations between Jaquez and VA Hospital staff, because Ballou has articulated proper rule 404(b) purposes for each incident. The incidents are usable in two general ways.  First, all three incidents -- to the extent that Ballou knew about them at the time of the charged incident -- go toward establishing Ballou's state of mind at the time of the charged incident.  To prevail on a defense of self-defense, Ballou must

---

the Jaquez-Mirabal incident as Exhibit F/1.  The Court will refer to the September 26, 2013, letter from the VA Hospital's deputy chief of staff to Jaquez as Exhibit J/8.

The exhibit list does not include the April 26, 2013, report filled out by Jaquez complaining about conditions in the VA Hospital -- Exhibit G in the Response -- and the Court will not address it again in this Memorandum Opinion and Order.  The letters from various VA Hospital employees complaining about Jaquez, Exhibit H in the Response, were not included on Ballou's exhibit list, and will continue to be referred to as Exhibit H.  The picture of the parking lot sign, exhibit I in the Response, is Exhibit 7 on Ballou's exhibit list, but the United States does not challenge its admission, and the Court will thus not refer to it again in this Memorandum Opinion and Order.

have been both: (i) actually acting in self-defense, i.e., he must have subjectively, actually believed that he needed to use force against Jaquez; and (ii) using only as much force as reasonably appeared to be necessary under the circumstances.  See Tenth Circuit Pattern Jury Instructions, Criminal 1.28, at 45 (2011)(Self-Defense or Defense of Another).  The extent to which Ballou knew about Jaquez' prior acts of aggression against VA Hospital employees is relevant both for establishing his credibility as to requirement (i) and for establishing the reasonably apparent necessity of force in requirement (ii).  Second, the three incidents are also relevant to determining the extent to which Jaquez aggressed against Ballou on the charged instance.  The answers to the questions whether Jaquez was the first aggressor and what level of force Jaquez used are relevant to Ballou's defense, as these answers indirectly bear on the probability that Ballou acted in self-defense, and directly bear on the probability that said self-defense was reasonable.

The Court will exercise some care in permitting the second genre of inference -- which basically says that Jaquez' prior violence towards VA Hospital staff makes it more likely that he was violent towards a VA Hospital staff member on this occasion -- because it is very close to character-propensity evidence -- a purpose for which these prior incidents cannot be properly used.  The distinction between the improper character-propensity inference and the proper rule 404(b) inferences is subtle, but identifiable.  The incidents are not to be admitted to show that Jaquez is a violent man, and that it is therefore more likely that he acted violently on this occasion; they are being admitted to show that he harbored violently ill will towards the VA Hospital staff, specifically, and towards Ballou -- who was directly involved in two of the three prior incidents -- in particular.  A person's animus towards another person or institution is not the same as that person's character, even if the animus is strong.  While the lengths to which a

- 37 -

person is willing to go to act on an animus likely reflects on that person's character -- certainly, Jaquez' willingness to become rude, violent, and profane could be construed to reflect poorly on his character -- it is equally probative of the extent of the animus itself, separate from the person's character.  The prior incidents demonstrate Jaquez' animus, which is in turn relevant to determining his intent, his motive, and, potentially, his plan in entering the employee parking lot, approaching Ballou, and instigating a verbal and physical confrontation with Ballou -- actions that Ballou has ascribed to Jaquez and which are relevant to Ballou's defense.  The Jaquez-Mirabal incident is additionally admissible to show modus operandi -- that Jaquez has committed a very similar act, in the same location, to a similar victim -- under the relaxed standard of similarity that applies to "reverse" 404(b) evidence -- a nonparty's prior bad acts that a criminal defendant seeks to admit.  See United States v. Montelongo, 420 F.3d at 1174-75 ("'[A] lower standard of similarity [between the crime at issue and 'other crimes' evidence] should govern 'reverse 404(b)' evidence because prejudice to the defendant is not a factor."  (quoting United States v. Stevens, 935 F.2d at 1404)).

There is an additional wrinkle to this case that might add needless confusion: Ballou can, in fact, use character evidence to establish a character-propensity inference -- he just cannot use this evidence.  Under rule 404(a)(2)(B), Ballou may elicit testimony about Jaquez' character as a violent person, and use that testimony to argue that Jaquez thus probably acted violently on this occasion.  Likewise, under rule 404(a)(2)(A), Ballou may elicit testimony of his own character for non-violence, and use that testimony to argue that he probably acted non-violently on this occasion.  The manner of introducing character evidence, however, is limited to testimony about the person's reputation for having a certain character trait or the witness' opinion of the extent to which the person possesses that trait; the trait may not be proven or illustrated to the jury with

specific examples of the person's conduct in conformity with said trait.  See Fed. R. Evid. 405(a).  Ballou cannot elicit testimony about Jaquez' prior altercations to show that Jaquez possessed a certain character trait, including a violent or short-tempered nature.  For that matter, Ballou cannot introduce instances of his own peaceful nature to show that he is peaceful.  For the Court to admit prior acts, the acts' relevance must be independently justified by a non-propensity rule 404(b) inference.

The Court will discuss the Jaquez-Mirabal incident separately from the other two incidents, but the rule 404(b) analyses for all three incidents are nearly identical.  The Court's analysis of the two prior Jaquez-Ballou incidents incorporates the analysis from the Jaquez-Mirabal incident except as noted.

### A.   BALLOU MAY INTRODUCE TESTIMONY ABOUT THE JAQUEZ-MIRABAL INCIDENT UNDER RULE 404(b), BUT HE MAY NOT ADMIT THE POLICE REPORT -- EXHIBIT F/1 -- INTO EVIDENCE, BECAUSE IT IS HEARSAY.

Testimony regarding the Jaquez-Mirabal incident is admissible both to suggest that Ballou acted in reasonable self-defense and to suggest that Jaquez acted violently.  The police report, however, is inadmissible hearsay.  It is only relevant for the truth of the statements within it, and it is not subject to any hearsay exception.

### 1.   The Jaquez-Mirabal Incident Tends to Show That Ballou Acted in Self-Defense, and That He Did So Reasonably, If and Only If Ballou Knew About the Incident.

The strongest rule 404(b) inference supporting admission of the Jaquez-Mirabal incident is that Ballou's knowledge of the incident supports his self-defense claim.  Self-defense requires that the defendant both (i) be actually acting in self-defense, i.e., he must subjectively believe that his actions are necessary to defend himself; and (ii) limit the force used to only that which

reasonably appears necessary under the circumstances.   The Tenth Circuit's pattern jury instruction on the issue provides:

## SELF-DEFENSE OR DEFENSE OF ANOTHER

The defendant [name the defendant] has offered evidence that he was acting in [self-defense] [defense of another].

A person is entitled to defend [himself] [another person] against the immediate use of unlawful force.  But the right to use force in such a defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.

[A person may use force which is intended or likely to cause death or great bodily harm only if he reasonably believes that force is necessary to prevent death or great bodily harm to [himself] [another]].

To find the defendant guilty of the crime charged in the indictment, you must be convinced that the government has proved beyond a reasonable doubt:

*Either*, the defendant did not act in [self-defense] [defense of another],

*Or*, it was not reasonable for the defendant to think that the force he used was necessary to defend [himself] [another person] against an immediate threat.

Tenth Circuit Pattern Jury Instructions Criminal 1.28, at 45 (2011)(emphasis in original)(citing United States v. Corrigan, 548 F.2d 879, 881-84 (10th Cir. 1977)).  The disjunctive language in the last two paragraphs emphasizes that a defendant's self-defense must be both subjectively honest and objectively reasonable to warrant acquittal.

The objective component of self-defense asks how a reasonable person in the defendant's shoes would perceive the situation, and takes into account all information and reasonably held beliefs that the defendant had at the time.  For example, if a defendant hands an unloaded gun to someone, and that person then points the gun at the defendant, the defendant would not be justified in using lethal force against the person, even though that response might be reasonable to an uninformed person otherwise in the defendant's shoes.  Conversely, a defendant would not

- 40 -

be held liable for pushing away a bleeding man whom the defendant reasonably believed to be carrying a deadly infectious disease, even if that belief later turned out to be mistaken. The objective component thus takes into account the alleged victim's conduct, as well as any reasonable beliefs the defendant might have about what the alleged victim's imminent conduct might be. The Jaquez-Mirabal incident put Ballou on notice that Jaquez might try to attack or harass him from his vehicle, as he did Mirabal. Moreover, when viewed in conjunction with the two incidents in which Jaquez attacked or threatened him, the incident could instill in Ballou a reasonable belief that Jaquez is a violent, aggressive, reckless, and possibly crazy person, who is apt to act in conformity with those traits by attacking him in the parking lot. This inference is the character-propensity inference to a tee, and while it is a forbidden inference for the fact-finder in a judicial proceeding to use, it is perfectly reasonable and legitimate for Ballou to have used.

The subjective component of self-defense is knowable only to the defendant and, unless the defendant takes the stand, direct evidence can rarely establish it. It is, at its core, a credibility determination; the jury must decide whether it believes that the defendant was actually acting in self-defense. In doing so, the jury may rely on the normal methods of gauging credibility, such as: (i) evaluating the defendant's demeanor during testimony, if he chooses to testify; (ii) weighing testimony, from witnesses who know the defendant, as to the defendant's character for truthfulness, see Fed. R. Evid. 608(a), although this method is also only available if the defendant takes the stand; (iii) considering character evidence, e.g., for peacefulness, that the defendant presents under rule 404(a)(2)(A); and (iv) considering evidence of the defendant's behavior before and after the incident, e.g., whether he seems angry before or guilty afterward. The most important factor in gauging whether a defendant's self-defense claim is sincere, however, is probably how believable it is that the factual circumstances of the incident in

question would give rise to an honest act of self-defense -- basically, the most important factor in the subjective component is probably whether the self-defense claim is objectively reasonable. The Court does not have statistics to back up this claim, but it strongly suspects that, when a self-defense claim is found to be objectively reasonable, it will almost always be found to be subjectively honest, absent specific evidence to the contrary. For this reason, Ballou's knowledge of the Jaquez-Mirabal incident is at least as relevant to the subjective component as it is to the objective component. It is probably even more relevant to the subjective component, because it could be used to suggest that Ballou feared Jaquez, which -- even if unreasonable -- would satisfy the subjective component.

The United States Court of Appeals for the Eighth Circuit in United States v. Gregg, 451 F.3d 930 (8th Cir. 2006)(Bye, J.), gave a clear articulation of how the rule 404(b) standard operates in self-defense situations. In that case, a defendant in a murder case had unsuccessfully sought to admit evidence of the victim's prior violent crimes, arguing that the defendant's knowledge of the victim's propensity for violence bolstered his self-defense contention and -- even if self-defense could not be established -- might have lead the jury to convict on a lesser included count, instead of second-degree murder. The Eighth Circuit wrote:

> Although specific acts evidence is not admissible to prove a victim acted in conformity with his character under Rule 405(b), such evidence may be admissible under Rule 404(b) to prove a defendant's state of mind. See United States v. Milk, 447 F.3d 593, 600 (8th Cir. 2006)(recognizing evidence of specific prior bad acts is allowed under Rule 404(b) in self-defense cases to prove state of mind, but affirming exclusion of such evidence under Rule 403); United States v. Saenz, 179 F.3d 686, 688 (9th Cir. 1999)(holding Rule 404(b) does not prohibit a defendant from presenting evidence of his knowledge of a victim's prior violent behavior or bad acts which caused defendant to have a subjective fear of imminent grave injury); Virgin Islands v. Carino, 631 F.2d 226, 230 (3d Cir. 1980)(admitting knowledge of victim's prior conviction as to state of mind under Rule 404(b)). Cf. United States v. Rocha, 916 F.2d 219, 241 (5th Cir. 1990)(holding evidence of a defendant's threat against an adverse witness related to the validity of his duress defense and therefore was probative of something

other than the defendant's character, making the evidence admissible under Rule 404(b)). Evidence of specific instances of a victim's prior violent conduct for purposes of proving a defendant's state of mind, however, is only admissible to the extent a defendant establishes knowledge of such prior violent conduct at the time of the conduct underlying the offense charged. See United States v. Saenz, 179 F.3d at 688.

United States v. Gregg, 451 F.3d at 935. The Eight Circuit ultimately affirmed the district court and upheld the conviction, however, because the defendant had not identified what specific acts of the victim he wanted to introduce or upon what rule 404(b) inferences it intended to rely, nor did he establish he knew of the victim's acts at the time of the killing. See 451 F.3d at 935-36.

The Court agrees with the Eighth Circuit that rule 404(b) contemplates the use of prior acts to show the defendant's state of mind for the purpose of establishing self-defense.

2. **The Jaquez-Mirabal Incident Tends to Show That Jaquez Acted in a Manner That Might Incite Reasonable -- and Thus Legal -- Self-Defense.**

The jury need not limit its consideration of the Jaquez-Mirabal incident to its effect on Ballou; the jury may also use the incident in determining what actions Jaquez took on the day of the charged incident. The strongest rationale for admitting the incident under rule 404(b) is that it tends to establish Ballou's state of mind at the time of the incident, for the purpose of establishing self-defense. That rationale is not the only applicable rule 404(b) inference, however, and the Court will flesh out the others for two reasons: (i) the jury is entitled to consider evidence for every purpose for which it may be properly considered -- as a practical matter, additional rule 404(b) inferences affect any limiting instruction the Court gives regarding the prior incident; and (ii) for the state-of-mind inference to apply, Ballou must establish, subject to rule 104,[8] that he knew about the Jaquez-Mirabal incident.

---

[8]Rule 104 is not a high standard. Where a fact's admissibility is conditional upon the truth of a second fact -- here, the fact that Ballou knew about the Jaquez-Mirabal incident -- the

The jury may consider the Jaquez-Mirabal incident for the purpose of establishing: (i) Jaquez' intent; (ii) potential motives that Jaquez may have had to instigate an altercation with Ballou; (iii) potential plans that Jaquez may have had to act out his animus towards the VA Hospital staff; (iv) that Jaquez' entrance into the employee parking lot and his run-in with Ballou was not a mistake; and (v) that accosting VA Hospital staff members in his car in the employee parking lot is Jaquez' modus operandi.  The Court notes three things at the outset.  First, all of these rule 404(b) inferences stem, wholly or in part, from Jaquez' animus towards the VA Hospital staff, and Ballou in particular.  As the Court has already explained, animus towards a specific person or entity is not the same as character.[9]  Second, at least some of these inferences -- the last three in particular -- would not pass muster under a traditional rule 404(b) analysis, in which the United States seeks to admit prior bad acts of a criminal defendant.  In the reverse 404(b) context, however, "a lower standard of similarity between the crime at issue and 'other crimes' evidence should govern 'reverse 404(b)' evidence."  United States v. Montelongo, 420 F.3d at 1174-75 (brackets omitted).  Third, Ballou might not wish to pursue -- or be able to support with evidence -- some or all of these inferences, and the Court will only instruct the jury as to the rule 404(b) inferences that Ballou asserts and supports with evidence.

---

second fact only needs to be supported by enough evidence for a reasonable jury to believe it. Furthermore, proof of the second fact need not be proven contemporaneously or before the conditionally admissible fact, but rather, "[t]he court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104(b).

[9]Certain animi, however, may carry such a strong negative character connotation as to ultimately fail rule 403's balancing test.  For example, in modern American culture, strong animus towards minority racial groups is widely considered part and parcel of abhorrent character.  In a case in which a white defendant is charged with murdering a black victim, the defendant's participation in Ku Klux Klan activities may support a proper rule 404(b) inference for intent or motive, but, given the disgust most of society feels towards members of such groups, the Court might demand that the prosecution demonstrate some evidence that the crime was racially motivated before admitting the rule 404(b) evidence.

The prior incidents go to intent, because they bring to light a pre-existing animus -- one strong enough to cause Jaquez to commit a low-level act of violence by hitting Ballou with a cane -- that Jaquez felt against Ballou and other VA Hospital employees.  This case would look entirely different if the alleged victim was a lost motorist who accidently wandered into the VA Hospital lot for the first time in his life.  Even if Jaquez did not initiate the physical altercation with Ballou, he went into the encounter with a fighting spirit, and the jury is entitled to know that fact.  Motive is closely related to intent, but refers to one's reason for committing to a course of conduct, rather than the level of deliberateness -- negligent, reckless, knowing, purposeful, or willful -- contemporaneous to the conduct itself.  See Black's Law Dictionary 1110 (9th ed. 2009)(noting that "motive" refers to "external circumstances likely in human experience to arouse the emotion, e.g., a slander on D may be evidence that D became angry; a purse of money left in sight of D may be evidence that D's desire to have it was aroused"); Google Dictionary, http://www.google.com (defining "motive" as "a reason for doing something, especially one that is hidden or not obvious").  Jaquez may have had a motive for any or all of the following: driving into the employee parking lot; approaching Ballou with his vehicle; yelling or gesticulating at Ballou through the window; or instigating a verbal or physical altercation with Ballou.  The Court cannot pin down exactly what Jaquez' motive would be, but, whatever it might be, his prior relationship with the VA Hospital staff is likely central to it.  Plan is one level further from intent than motive, referring to the course of conduct itself -- the arrangements and accommodations that must be made to commit the act, conceal it, and profit from it.  See The American Heritage Dictionary of the English Language 1001 (William Morris ed., New College ed. 1976)(defining "plan" as "[a]ny detailed scheme, program, or method worked out beforehand for the accomplishment of an object").  A plan might be to bait Ballou into attacking Jaquez in

circumstances where bystanders would likely describe Ballou as the aggressor.  See Response at 16 (Exhibit F/1)("Paul [Mirabal] stated that there have been documented situations at his work where Harry keeps trying to start fights with him and get him into trouble; even attempting to get him fired.").

Absence of mistake and modus operandi are two rule 404(b) inferences that find support only in the Jaquez-Mirabal incident and not in the other two incidents.  Both inferences stem from the similarity between the Jaquez-Mirabal incident and the charged incident, i.e., they both involve Jaquez driving up to VA Hospital employees in the employee parking lot,[10] rolling down his window, and aggressively harassing the employee.  See Response at 16.  This level of similarity falls short of the "signature quality" usually demanded to admit modus operandi evidence under rule 404(b), see United States v. Shumway, 112 F.3d 1413, 1420 (10th Cir. 1997)("We have held that to prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a 'totality of the comparison,' the acts share enough elements to constitute a 'signature quality.'"), especially given that there is only one prior similar incident, but, given the expanded applicability of reverse 404(b) inferences and Ballou's right to present evidence in his defense, the Court will permit the inference, see United States v. Montelongo, 420 F.3d at 1174-75.

### 3.    The Prior Incidents Pass the Rule 403 Balancing Test.

With all rule 404(b) evidence, the Court must weigh the licit, probative value of the evidence -- meaning the value of the rule 404(b) inference -- against the danger of unfair

---

[10]To this point, the Court has seen no evidence that the Jaquez-Mirabal incident occurred in the employee parking lot or involved Jaquez entering the employee parking lot at any time, see Response at 16, but, as the Court believes that Ballou has suggested this fact to be true, it will assume it for the time being.

prejudice -- which includes the character-propensity inference -- and exclude the evidence if the prejudicial impact substantially outweighs the probative value.  See Fed. R. Evid. 403, 404 advisory committee's notes.  Jaquez is not a party to this case, so prejudice "against him" is not a major issue.  The primary prejudice with which the Court is concerned in this case is the potential that the jury will rely upon the improper character-propensity inference.  The Court questions whether this inference is prejudicial to the United States to the extent that Jaquez' character suggests Ballou's innocence -- after all, the United States' goal in all cases is to do justice, and not just to secure a conviction,[11] and rule 404(a)(1)'s bar on character evidence is not based on the factual unreliability or low probative value of character-propensity inferences, but rather on their unfairness, traditionally to the defendant.[12]  Even if it were the case that any

---

[11]As the Honorable Alexander G. Sutherland, Associate Justice of the Supreme Court, once put it:

> The United States Attorney is the representative not of an ordinary party to a controversy but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with earnestness and vigor-indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed.  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

[12]The Tenth Circuit appears to have embraced the logic that prejudice to the United States is minimal in the reverse 404(b) context:

character-propensity evidence the jury might potentially use constitutes prejudice to the United States, the Court concludes that the character-propensity inference -- if separated totally from the permissible rule 404(b) inferences arising from Jaquez' animus towards the VA Hospital staff -- is minimal.  If these same prior incidents were admitted against Jaquez in, for example, a case in which he was accused of assaulting his wife -- and the Court uses this example because the rule 404(b) inferences present here would be wholly absent in such a case, leaving only the illicit character-propensity inference that Jaquez is a violent person who commits violent acts -- the Court thinks it unlikely that the jury would be overly swayed by them, especially if they received a proper limiting instruction.  The jury would likely wonder, if Jaquez is predisposed to domestic violence, why has he never assaulted his wife or children before the charged incident -- an act that would have rule 404(b) value, and not just character-propensity value -- but instead reserved his violence for low-level employees of faceless bureaucracies.

Given that the rule 403 test results in the exclusion of evidence only if its danger or prejudice, delay, or confusion "substantially outweigh[s]" its probative value, Fed. R. Evid. 403,

---

We are of the view . . . that a lower standard of degree of similarity of offenses may justly be required of a defendant using other-crime evidence defensively than is exacted from the State when such evidence is used incriminatorily . . . .  [O]ther-crimes evidence submitted by the prosecution has the distinct capacity of prejudicing the accused . . . .  Therefore a fairly rigid standard of similarity may be required of the State if its effort is to establish the existence of a common offender by the mere similarity of the offenses.  But when the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.

United States v. Stevens, 935 F.2d at 1403 (alterations and omissions in original)(quoting State v. Garfole, 388 A.2d 587, 591 (N.J. 1978)).

and that this test is softened further in the reverse 404(b) context, see, e.g., United States v. Stevens, 935 F.2d at 1403, the Court concludes that testimony regarding the Jaquez-Mirabal incident is admissible.

### 4.    Exhibit F/1, the Police Report, Is Inadmissible Hearsay.

Ballou can elicit testimony regarding the Jaquez-Mirabal incident, but Exhibit F/1, the police report, is excluded.  The report is an out-of-court statement by the officer who wrote it,[13] offered to prove the truth of the matter asserted, i.e., that Jaquez harassed Mirabal while in his vehicle in the VA Hospital parking lot.  See Fed. R. Evid. 801, 802.  The prejudice that inheres in the impermissible, truth-of-the-matter-asserted impact of the report substantially outweighs any use of the statements other than for the truth of their assertions -- and the Court cannot conceive of what that would be -- and, thus, the report is inadmissible.  See Fed. R. Evid. 403.

### B.    BALLOU MAY INTRODUCE TESTIMONY ABOUT EITHER THE JUNE 20, 2012 INCIDENT OR THE DECEMBER 20, 2012, INCIDENT BETWEEN HIM AND JAQUEZ, BUT MAY NOT ADMIT SUPPORTING DOCUMENTATION -- EXHIBITS E/2 AND D/3, RESPECTIVELY -- INTO EVIDENCE FOR HEARSAY REASONS.

Testimony regarding the two uncharged Jaquez-Ballou incidents is admissible, and the supporting documents inadmissible, under almost the entirely same analysis that applied to the Jaquez-Mirabal incident.  In fact, the three incidents strengthen each other's rule 404(b) inferences, because multiple instances of animus, obviously, more strongly suggest animus than a single instance of animus.  The Jaquez-Ballou incidents give rise to stronger rule 404(b) inferences vis-à-vis Ballou's state of mind: for one thing, Ballou obviously has knowledge of their existence; for another, one could reasonably assume that Jaquez' aggression towards Ballou

---

[13]This officer does not appear to be named on Ballou's witness list, see Gary Ballou's Witness List, filed October 8, 2014 (Doc. 33), which presents authentication problems as well as hearsay problems, see Fed. R. Evid. 901.

would have a greater impact on Ballou's state of mind -- and both his objective and subjective fear of Jaquez -- than Jaquez' aggression towards another VA Hospital employee. Furthermore, the rule 404(b) modus operandi inference is inapplicable to the Jaquez-Ballou incidents, because those incidents bear no similarity with the charged incident.[14]

The admissibility of Exhibits E/2 and D/3 is also analyzed slightly differently from their analog in the Jaquez-Mirabal incident, Exhibit F/1. All three exhibits are hearsay, but, because Ballou wrote Exhibits E/2 and D/3, either one can be read into evidence, but not admitted as an exhibit, if: (i) Ballou testifies in his own defense; (ii) Ballou no longer remembers the incident in question; and (iii) Ballou testifies that the exhibit was written when the incident was fresh in his memory and that it accurately reflects his recollection of the incident. See Fed. Evid. 803(5).

## II.   THE COURT WILL EXCLUDE EXHIBITS A/4, B/5, AND 10, AND ALLOW THE ADMISSION OF EXHIBITS C/6, 9, AND PORTIONS OF EXHIBIT J/8.

The Court will exclude Exhibits A/4, B/5, and parts of J/8 on hearsay grounds and permit admission Exhibit C/6 and parts of J/8. The Court will exclude Exhibit 10, because it is not justified under rule 609 and Ballou has not articulated a rule 404(b) basis for its admission. Finally, the Court will allow Ballou to admit Exhibit 9, because the United States has not demonstrated that it is irrelevant under rule 401.

### A.   THE COURT WILL EXCLUDE EXHIBITS A/4, B/5, AND PARTS OF J/8 ON HEARSAY GROUNDS, AND ADMIT EXHIBIT C/6 AND PARTS OF J/8.

Exhibit A/4 is a letter from the VA Hospital's business manager to Jaquez in which the business manager lists and responds to thirteen complaints that Jaquez lodged. See Response at 7-9. The document thus contains two categories of hearsay: (i) the concerns that the business

---

[14]Although the absence-of-mistake argument that Ballou advances -- which is that Jaquez did not end up in the employee parking lot by mistake -- is tied to the Jaquez-Mirabal incident, Ballou could just as easily advance the argument that Jaquez did not run into Ballou by mistake.

manager attributes to Jaquez are double hearsay -- out-of-court statements by the business manager paraphrasing, and sometimes quoting, additional out-of-court statements by Jaquez; and (ii) the business manager's responses to Jaquez, which largely clarify Jaquez' obligations to the VA Hospital, are single hearsay.  The second category is only potentially relevant for the truth of the matter asserted -- to establish some of the limitations placed on Jaquez at the VA Hospital. The first category might be relevant for reasons other than for the truth of Jacquez' assertions -- they might be relevant to show that Jaquez had an adversarial, complaint-laden relationship with the VA Hospital -- but that usage would still rely upon the truth of the business manager's assertions, i.e., that he recited Jaquez' concerns accurately.

Exhibit B/5 is even more clearly hearsay.  See Response at 10.  The exhibit is a letter from the VA Hospital's chief of staff to Jaquez, and contains assertions that Jaquez is "confrontational and threatening toward dialysis staff members," and that the chief of staff has looked into staff complaints against Jaquez and "share[s] the concerns of your dialysis providers."  Response at 10.  The letter's relevance is limited to establishing that these events occurred, or at least that the chief of staff believed they occurred, which is the matter that the letter asserts.

Exhibit C/6, on the other hand, is admissible, because it has relevance that is unrelated to the truth of its assertions, and the prejudicial effect of its hearsay usage does not substantially outweigh the probative value of its non-hearsay usage under rule 403.  See Response at 11.  The document is a set of proposed contractual terms from the VA Hospital to Jaquez setting forth conditions of care; some of the terms are rules or restrictions placed on Jaquez, e.g., "[y]ou will converse with dialysis staff in a respectful and non-threatening manner," and others are informative statements, e.g., "Dr. Link will continue to serve as your primary care provider."

Response at 11.  Jaquez was asked to sign the document -- there is a line that reads "Signature of Harry C. Jaquez" -- but Jaquez instead wrote "Refused to Sign."  Response at 11.  The terms themselves might be hearsay, especially the informative statements, but they are unimportant, if not entirely irrelevant, to the case.  What is most relevant is Jaquez' refusal to sign the document, which is indicative of his combative relationship with the VA Hospital.[15]  For all hearsay questions in which a statement is relevant for both hearsay and non-hearsay reasons, the Court must determine whether "the probative value [of the non-hearsay use of the statement] is substantially outweighed by the risk that the jury will use the statement as proof of the matter asserted."  Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 801.02[b], at 801-13 (2011).  A limiting instruction lowers that "risk," and the Court will give one if the United States asks for it.  See Fed. R. Evid. 106.  Even without a limiting instruction, however, the Court concludes that the danger that the jury might be influenced by the hearsay use does not substantially outweigh the probative value of the non-hearsay use.

Exhibit J/8 is a four-page letter from the VA Hospital's deputy chief of staff to Jaquez. See Response at 25-28.  Its first page describes problems that the VA Hospital has had with Jaquez, and includes such statements as: "Your most recent threatening behavior however, has

---

[15]The Court concludes that Jaquez' annotation, "Refused to Sign," is a not a "written assertion" that Jaquez refused to sign.  Fed. R. Evid. 801.  The Court concludes that writing "Refused to Sign" on the signature line of a contract form is comparable, for hearsay purposes, to signing a contract -- a "verbal act."  Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001).  Although mere offers are not verbal acts, because "[o]nly utterances by the parties . . . constituting the offer and acceptance *which brought the contract into being*  qualify as verbal acts," a simple "Refused to Sign," like a signature, a handwritten "X," or a "Void" stamp, lacks expressive content and is not open to differing interpretation. Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d at 1087 (emphasis in original)(internal quotation marks omitted).

once again impacted our efforts"; "[y]ou received a Health Care Agreement due to your confrontational and threatening behavior toward dialysis staff members"; "[y]our Health Care Agreement was revised because your behavior . . . continued to disrupt staff members"; "[y]ou harassed, threatened, and followed an off-duty dialysis staff member from VA property into the surrounding community."  Response at 25.  The Court will exclude this page for substantially the same reasons it excludes Exhibit B/5.  The remaining pages contain eight numbered paragraphs, the first six of which impose and describe various restrictions on Jaquez' receipt of treatment, including that Jaquez must check in with the VA police when he arrives at the VA Hospital, be escorted by police to and from treatment, and avoid all other areas of the VA Hospital but the dialysis unit.  See Response at 26 ("I am further restricting your whereabouts while on hospital grounds.").  The Court will allow admission of these seven paragraphs because they are not "assertions[s]," and thus not "statement[s]" under rule 801.   Fed. R. Evid. 801(a), (c) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion. . . .  'Hearsay' means a statement . . . .").  These paragraphs are commands, directives, or mandates, and thus have no truth value, because they assert no facts.  Their value as evidence is not in the truthfulness of any representations they make about some external condition in the world -- in the way that a statement that "John killed Dave," "I saw John kill Dave," or "I think John killed Dave," assert the fact that John killed Dave, and that fact, not the statement about the fact, is the relevant evidence -- but, rather, their relevance as evidence comes from the words themselves.  "Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."  United States v. Bellomo, 176 F.3d 580, 586 (2d Cir. 1999)(Noonan, J.)(citation omitted).  These restrictions are relevant in light of Exhibit 9 -- a video assertedly showing

Jaquez violating the restrictions by driving through the employee parking lot immediately before the charged incident -- discussed below.  Paragraph eight once again alludes to Jaquez' prior bad acts, and refers to a "flag" being placed on his record, but does not place any additional tangible restrictions on Jaquez' conduct.  Response at 26-27.  The Court will require Ballou to redact this paragraph as well, because the probative value of the non-hearsay usage -- that Jaquez was aware that his record was flagged -- has minimal relevance, which is substantially outweighed by the paragraph's hearsay usage -- that Jaquez' record had in fact been flagged.

Last, there is another ground for admission that the Court concludes does not apply here, but could potentially render many of Ballou's tendered exhibits -- the ones written by VA Hospital employees -- admissible: admission by a party opponent.[16]  See Fed. R. Evid. 801(d)(2). This rule allows a party to admit statements that would otherwise be hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship while it existed."  Fed. R. Evid. 801(d)(2)(D).  The following logical premises, if true, thus result in the evidence being admissible: (i) the United States is Ballou's opposing party; (ii) the statements were made by employees of the United States; and (iii) the employees' statements were made within the scope of their employment. The United States Department of Veterans Affairs -- a cabinet-level department just like the Department of Justice, the entity now managing Ballou's prosecution -- owns and operates the VA Hospital.  VA Hospital employees wrote many of the documents: Exhibits A/4, B/5, C/6,

---

[16]The Court notes that Ballou did not raise this argument; the Court takes it up on its own.

F/1, H, and J/8.[17]  See Response at 7-28.  Of those, all but perhaps F/1 -- Mirabal's police report[18] -- were made within the scope of employment.

The question, then, is whether the entire federal government is the "opposing party" in a criminal case for purposes of rule 801(d)(2).  The cases to have addressed this precise issue have concluded that it is not.  See Feis v. United States, 484 F. App'x 625, 626-27 (2d Cir. 2012)(holding that a district court did not abuse its discretion in excluding statements by a VA Hospital employee under rule 801(d)(2)(D));  Anestis v. United States, No. CIV A-11-28 DLB/REW, 2014 WL 4928959 (E.D. Ky. Sept. 30, 2014)(refusing to admit a VA Hospital employee's statement against the United States under rule 801(d)(2)(D)).  Formally, the President of the United States both runs the VA Hospital and has ultimate authority over all criminal prosecutions, but the Court concludes that defining the party at that level of breadth does not serve the interests of rule 801(d)(2).  The admissibility of opposing-party statements "is not based on reliability; rather, they are admitted as part of the adversary system"; they are admitted, in short, because the party said the words and should be stuck with them, regardless of their accuracy.  Saltzburg, supra § 801.02[6][f][ii], at 801-50.  The Court could, then, define the plaintiff in a criminal case at various levels of specificity for hearsay purposes: the entire federal

---

[17]Exhibits D/3 and E/2 are also statements that a United States employee made, but that employee is Ballou.  Ballou may not admit his own statements as opposing-party admissions.  A statement's proponent cannot be his own opposing party.  Cf. Young v. James Green Mgmt., Inc., 327 F.3d 616, 622 (7th Cir. 2003)(Ripple, J.)(holding that an employee's letter of resignation could not be attributed to the employer for hearsay purposes under rule 801(d)(2)(D), because the employee was "acting . . . as [the employer's] adversary").

[18]Mirabal was on the way home from work when the Jaquez-Mirabal incident occurred.  Travel to and from work is not generally considered to be within the scope of employment in other areas of law that use the test, such as vicarious liability for negligence.  See Restatement (Third) of Agency § 707 cmt. e (2006); Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 428 (2d ed.).('[T]he going and coming rule holds that in jobs with a situs such as an office or factory, an employee coming to work or going home from it is not in employment.").

government; the Department of Justice; the United States Attorney's Office for the District of

New Mexico; or the individual Assistant United States Attorneys assigned to this case. The

United States Court of Appeals for the First Circuit has held that all statements made by

Department of Justice employees are admissible against the United States as admissions by party

opponents:

> We first must determine whether the government is a "party-opponent" for
> purposes of this rule in a criminal case. We agree with Judge Bazelon that "the
> Federal Rules clearly contemplate that the federal government is a party-opponent
> of the defendant in criminal cases." United States v. Morgan, 581 F.2d 933, 937
> n.10 (D.C. Cir. 1978). We can find no authority to the contrary or reason to think
> otherwise. Whether or not the entire federal government in all its capacities
> should be deemed a party-opponent in criminal cases, cf. United States v.
> American Tel. & Tel., 498 F. Supp. 353, 356-58 (D.D.C. 1980)(civil case), the
> Justice Department certainly should be considered such.

United States v. Kattar, 840 F.2d 118, 130 (1st Cir. 1988)(Coffin, J.);

The Tenth Circuit has not addressed this issue. The Court has previously concluded that

a prosecutor's arguments in a prior trial are usable by the defendant in a subsequent trial, but has

not defined the scope of rule 801(d)(2)(D) in a criminal case. See United States v. Ganadonegro,

854 F. Supp. 2d 1088, 1101-07 (D.N.M. 2012)(Browning, J.). The Tenth Circuit has limited the

scope of rule 801(d)(2)(D) -- in all cases, not just those involving the United States -- to

situations in which the "party-opponent . . . controls the daily tasks of the declarant." Boren v.

Sable, 887 F.2d 1032, 1039 (10th Cir. 1989)(Brorby, J.). In the context of a criminal

prosecution, this statement could be construed as limiting rule 801(d)(2)(D) to statements made

by officers whom the President directly supervises, but this construction would be inconsistent

with the substantial body of case law admitting statements by Assistant United States Attorneys

-- whom the President does not directly supervise -- as opposing-party admissions against the

United States. See United States v. Ganadonegro, 854 F. Supp. 2d at 1101-07. A more

reasonable construction is that the Department of Justice is the "party" pitted against the criminal defendant for hearsay purposes, and that only Department of Justice employees' statements are attributable to the United States and admissible under rule 801(d)(2)(D).  The United States is listed as the formal party on case captions on many different kinds of cases, but this formality does not control for rule 801(d)(2)(D) purposes.  The Court, instead, looks at who the real party is, i.e., what government unit -- defined both by formal administrative compartmentalization and the extent to which the unit is unified by a common function -- the United States is representing. In a criminal prosecution, the "United States" on the case caption really refers to the Department of Justice.  If, however, this case were a civil case in which a VA Hospital patient was suing the United States for the VA Hospital's negligence, then the VA Hospital's employees' statements would be admissible against the United States as opposing-party statements.  The VA Hospital is not a party here, however, either formally or in reality, and the Court thus concludes that statements by VA Hospital employees are not opposing-party statements and are, therefore, not excluded from the definition of hearsay.

**B.      THE COURT WILL EXCLUDE EXHIBIT 10 REGARDLESS WHETHER JAQUEZ TESTIFIES, BECAUSE BALLOU HAS PUT FORTH NO PROPER 404(b) PURPOSE FOR THE EVIDENCE, AND IT IS NOT PROPER IMPEACHMENT-BY-CONVICTION MATERIAL UNDER RULE 609.**

Ballou has not sought to admit the judgment of Jaquez' misdemeanor conviction under rule 404(b), see Tr. at 56:21-57:14 (Benjamin), so the Court will grant the United States' request to exclude it, see Second MIL at 3.  The Court knows little about the incident underlying the conviction, so this ruling in limine should not be interpreted as closing the door on this evidence permanently; the Court could be persuaded to reconsider its ruling at trial if Ballou presents additional facts and rule 404(b) argument.

Additionally, even if Jaquez testifies, Ballou cannot impeach Jaquez with the conviction unless Jaquez specifically denies it on the stand.  A witness can only be impeached with a criminal conviction if the crime of conviction (i) is "punishable by death or by imprisonment for more than one year," i.e., is a felony, or (ii) is a crime of dishonesty.  Fed. R. Evid. 609(a)(1), (a)(2).  Jaquez was convicted of misdemeanor battery, which is not punishable by more than one year and is not a crime of dishonesty.

### C.  THE COURT WILL ALLOW BALLOU TO ADMIT EXHIBIT 9, BECAUSE THE UNITED STATES HAS NOT DEMONSTRATED THAT IT IS IRRELEVANT UNDER RULE 401.

The United States objects to Ballou admitting video of the VA Hospital parking lot, because it "is a video of [a] parking [lot] other than the one where the incident occurred," and thus has no relevance to this case.  Second MIL at 3.  Ballou asserts that the video shows him exiting a building and, later, a red car that he believes is Jaquez' pulling into the employee parking lot.  See Tr. at 50:20-51:1 (Benjamin).  Relevance under rule 401 is a very low standard, and the Court can conceive of several relevant uses for such a video.  For one thing, if the video shows what Ballou says it does, Jaquez was in violation of the VA Hospital's restrictions immediately before the charged incident.  That Jaquez chose to risk violating his conditions of treatment on this particular day to enter the employee parking lot could go to show that he was actively looking for Ballou or another VA Hospital employee, or that Jaquez had a plan in mind to confront Ballou or another VA Hospital employee -- perhaps any VA Hospital employee he could find.  The Court will not exclude the video.

**IT IS ORDERED** that: (i) the Government's Motion in Limine Regarding Prior Acts of the Victim, filed October 2, 2014 (Doc. 22), is denied; (ii) the Government's Second Motion in Limine and Objections to Defendant's Proposed Exhibits, filed October 9, 2014 (Doc. 35), is

granted in part and denied in part; and (iii) the Government's Third Motion in Limine, filed October 9, 2014 (Doc. 36), is denied as moot.  Exhibits 1, 2, 3, 4, 5, and 10 of Gary Ballou's Exhibit List, filed October 8, 2014 (Doc. 31), are excluded from use as evidence; Exhibits 6, 7, and 9, are admissible; and Exhibit 8 is admissible, except for its first page and its eighth-numbered paragraph, which must be redacted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
   United States Attorney
Norman Cairns
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

     *Attorney for the Defendant*